1
2
3
4
5
6
7
8
9
10            **UNITED STATES DISTRICT COURT**
11        **SOUTHERN DISTRICT OF CALIFORNIA**
12
13   RACHELL LARA,                       CASE NO. 12-CV-2116 JLS (NLS)
14                      Plaintiff,    **ORDER: (1) DISSOLVING THE**
                                     **COURT'S NOVEMBER 15, 2012**
15       vs.                        **ORDER; AND (2) DENYING**
                                       **PLAINTIFF'S REQUEST FOR A**
16   DEUTSCHE BANK NATIONAL TRUST    **PRELIMINARY INJUNCTION**
  COMPANY, et al.
17                         (ECF No. 3)
                   Defendants.
18

19        Presently before the Court is Plaintiff Rachell Lara's ("Plaintiff") *ex parte* motion for a

20  temporary restraining order and an order to show cause why a preliminary injunction should not issue.

21  (ECF No. 3.)  On November 15, 2012, the Court issued an Order to prevent Defendants from selling,

22  or taking any other steps to deprive Plaintiff of, possession of the property at 21445 Japatul Valley

23  Road, Alpine, California. (November 15 Order, ECF No. 8.) Defendants opposed the motion. (Opp'n,

24  ECF No. 6.)  The Court held a hearing on November 19, 2012, after which the Court took the matter

25  under submission.

26  ///
27  ///
28  ///

12cv2116

# BACKGROUND

Plaintiff brings this action against Defendants Deutsche Bank National Trust Company as Indenture Trustee for American Home Mortgage Investment Trust 2005-2, Mortgage-Backed Notes, Series 2005-2 ("Deutsche") and Does 1-10 ("Defendants") asserting six causes of action. Specifically, Plaintiff asserts the six following claims: (1) declaratory relief; (2) negligence; (3) quasi-contract; (4) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; (5) unfair business practices in violation of California Business and Professions Code § 17200 et seq.; and (6) accounting.

This action concerns the disputed ownership and loan status of the property at 21445 Japatul Valley Road, Alpine, California (the "Property"). Both parties agree that, on or about April 19, 2005, George and Wilma Declair executed a loan in the amount of $290,250.00 secured by a deed of trust to the Property. (Request for Judicial Notice ("RJN"), ECF No. 7-1 Exh. 1; Complaint, ECF No. 1 Exh. A.) The deed of trust securing the loan identified American Home Mortgage Acceptances as the lender, Chicago Title as the Trustee, and MERS as the nominee beneficiary. (*Id.*) On May 2, 2005, the deed of trust was recorded as Instrument Number 2005-0363434 in the office of the Recorder of San Diego County. (*Id.*) On March 29, 2006, George and Wilma DeClair executed a quit claim of the property in favor of "The Declair Family House Trust," which was subsequently recorded on April 4, 2006. (Complaint, ECF No. 1 Exh. B.)

According to the documents submitted by Deutsche as attachments in its Request for Judicial Notice, an Assignment of Deed of Trust was executed by Mortgage Electronic Registration Systems, Inc. ("MERS") on December 15, 2009, assigning interest under the Deed of Trust to American Home Mortgage Servicing, Inc. (RJN, ECF No. 7-1 Exh. 2.) On December 28, 2009, an Assignment of Deed of Trust was executed by American Home Mortgage Servicing, Inc., assigning interest under the Deed of Trust to Deutsche. (RJN, ECF No. 7-1 Exh. 3.) Subsequently, on December 29, 2009, a Substitution of Trustee was executed, whereby Power Default Services, Inc. became the substitute trustee under the Deed of Trust. (RJN, ECF No. 7-1 Exh. 4.)

Sometime later, George and Wilma Declair stopped making payments on the loan. On February 1, 2010, when the loan was $13,345.32 in arrears, a Notice of Default was recorded by T. D. Service Company as authorized agent for the beneficiary by LSI Title Company as agent, naming

1  Deutsche as the beneficiary of the Deed of Trust.  (RJN, ECF No. 7-1 Exh. 5; Complaint, ECF No.

2  1 Exh. E.)

3        According to Plaintiff, on January 10, 2011, the Plaintiff recorded an Affidavit of Death of

4  Trustee which allegedly transferred title and ownership of the property to her, subject to the existing

5  liens.  (Complaint, ECF No. 1 ¶ 27; ECF No. 1 Exh. F.)  Plaintiff alleges that there have been no

6  substitutions or assignments recorded of the Note or Deed of Trust with the San Diego County

7  Recorder's office, and that therefore American Home Mortgage Acceptance, Inc. remains the owner

8  of the Note and the Lender under the Note and Deed of Trust, and Chicago Title remains the named

9  Trustee.  (Complaint, ECF No. 1 ¶ 29.)

10        On June 6, 2011, a Notice of Trustee's Sale was recorded by Power Default Services, Inc. with

11  a June 29, 2011 sale date.  (RJN, ECF No. 7-1 Exh. 6.)  On September 4, 2012, a second Notice of

12  Trustee's Sale was recorded by Power Default with an October 5, 2012 sale date.  (RJN, ECF No. 7-1

13  Exh. 7.)  This sale was subsequently continued for November 15, 2012.

14        On August 27, 2012, Plaintiff filed the underlying complaint. (ECF No. 1.)  Plaintiff's

15  complaint asserts six causes of actions, only two of which, a declaratory relief claim brought under

16  28 U.S.C. § 2201 and a Fair Debt Collection Practices Act ("FDCPA") claim brought under 15 U.S.C.

17  § 1692, arise under federal law.  The remaining state law claims assert various claims for negligence,

18  quasi contract, accounting, and violations of California Business and Professions Code § 17200.

19  Plaintiff ultimately seeks damages, including punitive damages, rescission of several of the

20  transactions described above, including the assignment of the Deed of Trust, an order finding that

21  Defendants have no legally cognizable rights as to the Property, an order enjoining defendants from

22  continuing or initiating any actions against the Property, and an order compelling Defendants to

23  disgorge all amounts wrongfully taken from the Plaintiff.  (ECF No. 1 at 31-32.)  On November 9,

24  2012, Plaintiff filed her motion for temporary restraining order and order to show cause why a

25  preliminary injunction should not issue.  (ECF No. 3.)

26  ///

27  ///

28  ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEGAL STANDARD**

Temporary restraining orders are governed by the standard applicable to preliminary injunctions. *See* Fed. R. Civ. P. 65. A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). Although all four factors must be met, they operate on a sliding scale. "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Id.* at 1135.

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The typical preliminary injunction is prohibitory, and seeks to "maintain the status quo pending a trial on the merits." *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 89 (2d Cir. 2006); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-89 (9th Cir. 2009). A mandatory injunction, in contrast, "orders a responsible party to take action . . . [and] goes well beyond simply maintaining the status quo." *Marlyn Nutraceuticals*, 571 F.3d at 879 (internal quotations and citations omitted). In this context, the "status quo" refers to "the last, uncontested status which preceded the pending controversy." *Id.* Mandatory injunctions are particularly disfavored, and should not be granted "unless extreme or very serious damage will result." *Id.*

**ANALYSIS**

To prevail on her motion for a preliminary injunction, Plaintiff must establish that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) that an injunction is in the public interest. Here, Plaintiff has not met her burden to establish a likelihood of success on the merits under any claim.

12cv2116

**1. Plaintiff's Allegations Related to the Foreclosure**

Plaintiff's main contention is that Defendants have no financial interest in the Note and Deed of Trust that encumbers the Property. (ECF No. 1 ¶¶ 31-33.) Specifically, Plaintiff contends that there have been no substitutions or assignments recorded of the Note or Deed of Trust with the San Diego County Recorder's office, and that therefore American Home Mortgage Acceptance, Inc. remains the owner of the Note and the Lender under the Note and Deed of Trust, and Chicago Title remains the named Trustee. (Complaint, ECF No. 1 ¶¶ 29, 36.) Accordingly, because Deutsche has no valid rights with respect to the Property, Plaintiff asserts that Defendant Deutsche has no authority to conduct the foreclosure sale. (ECF No. 1 ¶¶ 17, 55-56.)

However, as Deutsche points out in its opposition, an Assignment of Deed of Trust did in fact assign all beneficial interest in the Deed of Trust to Deutsche. (ECF No. 6 at 9.) MERS, acting solely as a nominee for American Home Mortgage Acceptance, Inc., assigned the Deed of Trust to American Home Mortgage Servicing, Inc. on December 15, 2009. (*Id.*) Then, on December 28, 2009, American Home Mortgage Servicing, Inc. assigned the Deed of Trust to Deutsche. (RJN, ECF No. 7-1 Exh. 3.) Both assignments were subsequently recorded on March 9, 2010.

Plaintiff further seems to suggest that the assignment is invalid because of the involvement of MERS. Specifically, Plaintiff alleges that the Deed of Trust "does not permit MERS to transfer the beneficial rights to the underlying note" and that MERS "did not and could not grant, assign, or transfer any true or pecuniary beneficial interest in Plaintiff's Note and Mortgage to any of the Defendants." (ECF No. 1 ¶¶ 42-44.) Plaintiff cites to *In re Salazar*, 448 B.R. 814 (Bankr. S.D. Cal. 2011), for the contention that MERS is not a valid alternative to statutory foreclosure laws and that any assignment must therefore be fraudulent. (ECF No. 1 ¶ 47.) However, *In re Salazar* was reversed and remanded, and the court went on to hold that "both the bank and the bank's nominal beneficiary and agent 'are entitled to invoke the power of sale in the [Deed of Trust].'" *Mena v. JP Morgan Chase Bank, N.A.*, No. 12-1257, 2012 U.S. Dist. LEXIS 128585 (Sept. 7, 2012, N.D. Cal.) (quoting *In re Salazar*, 470 B.R. 557, 560 (S.D. Cal. 2012)). Here, the Deed of Trust specifically states that MERS is a nominee beneficiary of the lender, (ECF No. 7-1 Exh. 1),

and Plaintiff fails to assert any factual basis to suspect that MERS lacks authority to proceed with the foreclosure.  Therefore, Plaintiff fails to provide any support for her claims that the assignment of the Deed of Trust by MERS was invalid or fraudulent.

Plaintiff also argues that Defendants are not the owners or holders of the note, and are not entitled to enforce the note and foreclose the property.  (Complaint, ECF No. 1 ¶¶ 20, 51-52.) Plaintiff seems to suggest that Defendants must "establish a Pecuniary [sic], legal, and equitable interest in the Property, and provide an unbroken chain of title to Plaintiffs [sic] Note and Mortgage."  (Complaint, ECF No. 1 ¶ 53.)  However, as addressed by Deutsche's opposition, the California Court of Appeal has addressed this issue in *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149 (Cal. App. 2011), and rejected this "holder of the beneficial interest under the note" theory because it would add additional requirements into a comprehensive nonjudicial scheme.

**2. Likelihood of Success**

*A. First Cause of Action for Declaratory Relief*

Plaintiff's first cause of action states a request for declaratory relief.  (Complaint, ECF No. 1 ¶¶ 71-80.)  Plaintiff claims that an actual controversy has arisen between Plaintiff and Defendants concerning their respective rights and duties regarding the Note and Deed of Trust. (Complaint, ECF No. 1 ¶¶ 76-77.)  Plaintiff claims that Defendants do not have the authority to foreclose on the Property and requests a judicial determination of the parties' rights, obligations, and interests in the Property.  (Complaint, ECF No. 1 ¶¶ 74, 79.)

Declaratory relief is appropriate when there is a "substantial controversy, between parties having adverse legal right, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  Here, Plaintiff's request for declaratory relief is generally pled and is based on the ground that Defendants do not have the authority to foreclose on the Property.  As discussed above, Plaintiff's theories are not cognizable and there is no basis for declaratory relief.  Further, nothing in California's comprehensive statutory non-judicial foreclosure scheme permits declaratory relief to establish whether any Defendant has the right to foreclose on the property.  *See Gomes*, 192 Cal.

1    App. 4th at 1154.  In the absence of a viable claim and an actual controversy, Plaintiff fails to

2    establish any likelihood of success on her first claim.

3    ***B. Second Cause of Action for Negligence***

4         To state a claim for negligence, Plaintiff must allege "(1) a legal duty to use reasonable

5    care; (2) breach of that duty; and (3) proximate [or legal] cause between the breach and (4) the

6    plaintiff's injury."  *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation

7    omitted).  Generally, "[a]bsent special circumstances a loan transaction is at arms-length and no

8    duties arise from the loan transaction outside of those in the agreement."  *Castaneda v. Saxon*

9    *Mortg. Servs.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009).

10        Here, Plaintiff has not alleged any facts demonstrating that Deutsch exceeded its

11   conventional role as a mere lender of money and thus owed Plaintiff a legal duty.  Plaintiff only

12   alleges that Defendants had a "duty to exercise reasonable care and skill to follow California law

13   with regard to enforcement of monetary obligations, and to refrain from taking or failing to take

14   any action against Plaintiff that they did not have the legal authority to do."  (ECF No. 1 ¶ 83.)

15   Plaintiff's vague allegations are conclusory in nature and, as discussed above, are unsupported by

16   facts.

17        Further, Plaintiff fails to address why this claim is not barred by the applicable statute of

18   limitations, here two years.  *See* Cal. Code Civ. Proc. § 339.  The allegations pertaining to

19   negligence at the time of the Assignment of Deed of Trust in December 2009 clearly occurred

20   more than two years ago, and Plaintiff has not stated precisely when Defendants' other allegedly

21   negligent acts took place.   Accordingly, Plaintiff's negligence claim also appears unlikely to

22   succeed.

23   ***C. Third Cause of Action for Quasi Contract***

24        Plaintiff alleges that Defendants were unjustly enriched by accepting mortgage payments

25   from plaintiff even though they had no interest in Plaintiff's Note.  (Complaint, ECF No. 1 ¶¶

26   89-90.)  As an initial matter, a claim for quasi-contract is synonymous with one for unjust

27   enrichment.  *FDIC v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).  Accordingly, it "is not an

28   independent cause of action under California law."  *In re Toyota Motor Corp. Unintended*

1    *Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1193 (C.D. Cal.

2    2010).  Plaintiff's claim is therefore subject to dismissal for this reason alone.  However,

3    Plaintiff's equitable claim also fails because there is no equitable basis for quasi-contractual

4    recovery when the parties have an actual agreement covering compensation.  *Skelley v. Bank of*

5    *Am., N.A.*, 2012 U.S. Dist. LEXIS 120830, at *10 (S.D. Cal. Aug. 23, 2012).  Here, because the

6    Deed of Trust governs, Plaintiff's fails to demonstrate a likelihood of success on her quasi contract

7    claim.

8    ***D. Fourth Cause of Action for Violation of the FDCPA***

9        Plaintiff alleges that Defendants violated the FDCPA by making false representations and

10    threats in relation to Plaintiff's debt obligation.  (Complaint, ECF No. 1 ¶ 94.)  To state a claim for

11    violation of the FDCPA, a plaintiff must allege: (1) the plaintiff has been the object of collection

12    activity arising from a consumer debt; (2) the defendant collecting the debt is a debt collector; (3)

13    and the defendant has engaged in any act or omission in violation of the prohibitions or

14    requirements of the Act.  *Uyeda v. J.A. Cambece Law Office, P.C., J.A.*, No. 04-4312, 2005 U.S.

15    Dist. LEXIS 9271, 2005 WL 1168421, at *3 (N.D. Cal. May 16, 2005) (citing 15 U.S.C. §§ 1692a,

16    1692k).  In the context of the FDCPA, a "debt collector" is "any person who uses any

17    instrumentality of interstate commerce or the mails in any business the principal purpose of which

18    is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly,

19    debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

20        Here, Plaintiff fails to demonstrate that Defendants are debt collectors.  A "debt collector"

21    does not include an individual who collects or attempts to collect a debt "to the extent such activity

22    . . . concerns a debt which was not in default at the time it was obtained by such person."  15

23    U.S.C. § 1692a(6)(F).  "Under this exception, creditors, mortgagors and mortgage servicing

24    companies are not 'debt collectors' and are exempt from liability under the FDCPA."  *Skelley v.*

25    *Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 120830, at *13 (S.D. Cal. Aug. 23, 2012) (internal

26    citations omitted) (quoting *Caballero v. Ocwen Loan Servicing*, No. C-09-01021, 2009 U.S. Dist.

27    LEXIS 45213, 2009 WL 1528128, at *1 (N.D. Cal. May 29, 2009)).  Accordingly, Plaintiff fails to

28    establish a likelihood of success on her FDCPA claim.

### E.  Fifth Cause of Action for Unfair Business Practices

Plaintiff alleges that Defendants have engaged in unfair, unlawful, and fraudulent business practices with respect to mortgage loan servicing and related matters.  (Complaint, ECF No. 1 ¶ 102.)  Plaintiff further alleges that Defendants have violated 12 U.S.C. § 2605(e), et seq., 18 U.S.C. § 1951(b)(2), and Cal. Penal Code Section 532(f)(a)(4).  (Complaint, ECF No. 1 ¶¶ 97-99.)

California Business and Professions Code § 17200 prohibits "unfair competition," meaning "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."  To have standing to allege a claim for violation of  Section 17200, a plaintiff must allege that he "has suffered injury in fact and has lost money or property" as a result of the alleged unfair practices.  Bus. & Prof. Code § 17204; *R&B Auto Ctr., Inc. v. Farmers Grp., Inc.*, 140 Cal. App. 4th 327, 360 (2006); *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010).  Here, Plaintiff does not allege any facts demonstrating standing.  Assuming that Plaintiff intends to claim damages in the form of mortgage payments or late fees, loan payments made pursuant to a valid contract cannot support a showing of harm.  *Auerbach v. Great W. Bank*, 74 Cal. App. 4th 1172, 1182 (1999).  Accordingly, Plaintiff is unlikely to succeed on the merits of their fifth claim.

### F.  Sixth Cause of Action for Accounting

Plaintiffs sixth claim seeks "an accounting of the receipts and disbursements" of mortgage payments made to Deutsche.  (Complaint, ECF No. 1 ¶¶ 112-114.)  In California, an accounting is an equitable remedy.  *Batt v. City & Cnty. of S.F.*, 155 Cal. App. 4th 65, 82 (2007).  "A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires  an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting."  *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009).  An accounting is dependent on a substantive basis for liability.  *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023 n.3 (2000).

Here, Plaintiff has not established any fiduciary duties under which Deutsche owed her a detailed accounting.  Further, Plaintiff has failed to state any viable cause of action against Deutsche to which the request for a legal accounting may be tethered.  Accordingly, Plaintiff is

1  unlikely to succeed in her claim for accounting.

2                              **CONCLUSION**

3          For the foregoing reasons, the Court finds that Plaintiff is unlikely to succeed on the merits

4  of any of her claims.  Although it is true that Plaintiff is likely to suffer irreparable harm in the

5  absence of preliminary relief, and that the balance of equities may also tip in her favor, Plaintiff

6  simply has not established that she is likely to succeed on the merits.  Accordingly, the Court

7  **HEREBY DISSOLVES** its November 15, 2012 Order, and **DENIES** Plaintiff's request for a

8  preliminary injunction.

9          **IT IS SO ORDERED**.

10  DATED:  November 29, 2012

11                                          _Janis L. Sammartino_____
                                            Honorable Janis L. Sammartino
12                                          United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12cv2116